## Hendricks *v.* Pyramid Motor Freight Corporation et al., Appellants.

Argued December 8, 1937. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Henry R. Heebner,* with him *Wm. Clarke Mason,* for appellant, No. 296.

*C. Donald Swartz,* of *Swartz, Campbell & Henry,* with him *Herbert A. Barton,* for appellant, No. 302.

*Raymond A. White, Jr.,* for appellee.

OPINION BY MR. JUSTICE LINN, January 3, 1938:

These appeals, No. 296 by Delaware River Ferry Company, and No. 302, by Pyramid Motor Freight Corporation, are from judgments on a verdict, reduced from $20,000 to $15,000 in an action brought by the plaintiff on behalf of herself and children for the death of her husband. The Pyramid Corporation now concedes liability and complains only that the verdict was not reduced more. We have considered the evidence in the light of the argument and all agree that there was no

abuse of discretion: *Filer v. Filer,* 301 Pa. 461, 152 A. 567. In No. 302, therefore, the judgment is affirmed.

A very different problem is presented by the Ferry Company's appeal, the assignments of error going to the refusal to grant its motion for judgment n. o. v. and to errors in the charge.

The Ferry Company is a common carrier and at the time of the accident, operated a ferry boat between Philadelphia and Camden. Plaintiff's husband, Hendricks, was employed by Horn and Hardart company as a truck driver. He drove a Ford truck on the boat at the Philadelphia terminal to be transported to Camden. His truck was the first in line and was stopped with brakes set and power off, four or five feet from the iron gate or barrier extending across the boat from one side to the other about fifteen feet from the bow. This barrier was divided into four gates, one across the wing decks at each side to keep back passengers from the forward deck, and two across the main deck, hinged on pillars at the edge of the wing decks, and meeting in the center of the main deck; steel cables, three-fourths of an inch thick, also extended along the gates from each of the pillars to the center of the main deck where they were united by a metal catch.

The next car in line behind Hendricks's truck was a Dodge Sedan which stopped two or three feet behind the truck, also with brakes set and power off. The third and last vehicle in this line was the Pyramid Company's combination tractor and trailer which stopped two or three feet behind the Dodge car. This combination tractor and trailer was thirty-three feet long and weighed ten tons empty. It was equipped with an air brake system, but, unfortunately, the driver had neglected to attach the air hose from the tractor to the trailer, so that there was no available brake for the trailer's wheels in the emergency soon presenting itself. A rule of the Ferry Company required its deck hands (the boat carried the crew required by the Federal reg-

ulations) to place a block against a front wheel of the first and of the second cars in line. It is undisputed that such a block was in place in front of Hendricks's truck, but the evidence is conflicting whether one was placed in front of the Dodge car. We must therefore now assume, in plaintiff's favor, that the deck hands failed to comply with the rule and did not block the second car.

Warnings were posted prohibiting drivers from starting their motors before the boat was made fast; the Pyramid Company's driver was familiar with them; a federal statute[1] likewise required that precaution. Before the boat reached the Camden landing bridge, the Pyramid Company's driver, in violation of the regulations, started his motor, standing in front of the truck, by cranking. The boat was then about 50 feet from the landing bridge slowly drifting in within the piling defining the ferry slip. It is not contended that there was any failure in the mechanical operation of the boat or of the facilities of transportation. When the truck was cranked, it immediately started forward in gear, and, before the driver could stop it by getting into the driver's place and applying such brakes as he had to the rear wheels of the tractor, his truck had run into the Dodge car and pushed it against Hendricks's truck with such force that it went through the gates and the steel cable and off the bow into the water. The thing happened so quickly that Hendricks, who had been seated in the cab of his truck, was unable to get out and was drowned. It is not disputed that his truck went through the gates with such force that one of the gates, in opening, struck a deck hand and knocked him from the boat across the deck into the water. For the purposes of passing on the motion for judgment, we shall assume, though this also is disputed, that the steel cable was not properly fastened and that this was a breach of the Ferry Company's

---

[1] 46 USCA Section 465.

duty. Two such breaches of duty therefore are to be considered—failure to place a block in front of the Dodge car and failure to have a stronger cable, or more secure fastening where the two ends were united.

The measure of care to be exercised by a common carrier of passengers is familiar, and if, as here, the carrier transports the passenger's truck, in a sense in the passenger's care or custody, the carrier must furnish a boat equipped to enable that duty to be performed in conformity with the rule. Compare *Sturgis v. Kountz,* 165 Pa. 358, 30 A. 976. Assuming that from the conflicting evidence a properly instructed jury would find the Ferry Company negligent in failing to block the Dodge car and that the steel cable was improperly fastened or that the fastening broke when Hendricks's car was forced against it by the Dodge car and Pyramid Company's truck, the legal question still remains whether, in the circumstances, the law casts the legal responsibility for plaintiff's loss on the Pyramid Company alone, or whether the negligence of the Ferry Company, in the respect indicated, can also be said to have been a substantial or legal cause.

The answer to this inquiry depends on whether the Pyramid Company's driver's conduct was so extraordinary as not to have been reasonably foreseeable, or whether it was reasonably to be anticipated.[2] We think that proper appreciation of the recklessness (Restatement, Torts, Vol. II, Section 500) of his act requires the court to say his conduct was so extraordinary as not to have been foreseeable and that accordingly the learned court below should have granted defendant's motion for judgment.[3]

---

[2] See Eldredge: Culpable Intervention as Superseding Cause (1937), 86 U. of P. L. Rev. 121 et seq.; *Kline v. Moyer,* 325 Pa. 357, 191 A. 43; *Dominices v. Monon. Con. Ry.,* 328 Pa. 203.

[3] See *Leoni v. Reinhard,* 327 Pa. 391.

There is no evidence that the ferry boat was not constructed and equipped sufficiently to enable the Ferry Company to perform its contracts with its passengers; courts take judicial notice that frequent and regular inspection of such boats are required pursuant to federal regulations; indeed they were referred to in the evidence. There was no duty on the Ferry Company to inspect each car as it came aboard to ascertain whether its brakes and other machinery were in good working order. There is no evidence that the Ferry Company knew that the brakes on the trailer were not connected with the tractor and would therefore not work if emergency required them.

We then have a driver of a vehicle weighing ten tons, inadequately equipped with working brakes, cranking his motor in violation of a federal regulation of which notice was posted on the boat and with which he was familiar, at a time when there was no one in the cab to control the car, which then moved forward before he could get control of it (and therefore must have been left in gear, notwithstanding what he says to the contrary) and with all the force of its great weight, pushed the two cars ahead of it with the tragic result stated. A witness who was in Hendricks's truck and who was called by plaintiff described the force by which his truck was pushed through the gate by saying "We went through there so quick after the noise [of starting the truck?] I could not tell very much. Looked like a sudden lunge and we were through." A witness, David Dash, called by plaintiff, testified that he was in the Dodge car and when asked, in direct examination ". . . what happened" replied, "All I know there was an awful crash. Q. Where did the crash occur? A. From the rear. Q. What was the next thing that happened after you heard a crash; did you feel anything? A. Did I feel anything? Q. Yes, sir. A. I felt plenty. Q. What was it you felt? A. I thought the back of

my neck was broke." If indicted, a jury, on such evidence, would have been justified in convicting the driver of involuntary manslaughter. The truck driver's misconduct was not foreseeable. The carrier's obligation to passengers is not that of insurer.[4] There is nothing in the record suggesting that the equipment was not sufficient for all normal purposes, sufficient, for example, to control such movement of vehicles on the deck as might result from rough handling of the boat during transportation. For such contingencies, the carrier must undoubtedly be prepared but it cannot be said that the carrier must anticipate that an ill-equipped ten-ton truck will be started and run into other parked vehicles during transportation. The gates and cable which are said to have been unable to stop the movement of the trucks were not intended to withstand such a movement; it does not appear that they were not sufficient to enable the carrier fully to comply with its contract of carriage. That the gates and the cable were not stronger or more securely fastened and that the Dodge car was not blocked were mere incidents in the transaction; they were not a substantial factor in causing the harm.

No. 296. Judgment reversed and here entered for defendant.

---

[4] In *Gerlach v. Pittsburgh Railways Co.,* 94 Pa. Super. Ct. 121, 130 (see cases there cited), it is said: "The carrier is not bound to provide against contingencies which it had no reasonable grounds to apprehend, nor is it bound to protect its passengers from rudeness or bad manners on the part of strangers or other passengers, unless such conduct amounts to a breach of the peace."