Goodman & Theise, Inc., *v.* Scranton Spring-Brook Water Service Company, Appellant.

Argued May 23, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*W. J. Fitzgerald,* with him *Fitzgerald & Kelly* and *Frank J. McDonnell,* for appellant.

*R. T. Law,* with him *Mackie, Murphy & Law,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, June 29, 1945:

What gave rise to this action was an explosion of gas; the responsibility for its occurrence is the determining factor of the litigation.

The situation preceding the accident was wholly different from those which characterized our former cases

dealing with the relative duties of a property owner and a gas company with respect to the proper maintenance of the service pipe supplying the property.

There was formerly a residential property at 820 South Washington Avenue in the City of Scranton, and in 1916 a service pipe for gas was installed in the premises. In 1928 defendant company, which is a public utility corporation engaged in the business of manufacturing and distributing gas and water, was notified that gas was no longer required for this property; accordingly, it removed the meters from the house and stopped the service, but, instead of disconnecting the line at the curb, it merely capped the service pipe inside the cellar wall and retained gas in the pipe under pressure from the Washington Avenue main. Later in that same year the house was torn down, the cellar filled in, and the service pipe buried in earth, cinders and debris. In 1929 a factory building was erected upon the lot; the basement was located in a different place than the old cellar and a concrete floor was laid upon the filled-in ground over this pipe. A new service pipe was installed in 1938 entering the factory building from a different street, but this service also was discontinued and this new pipe capped in 1940, since which time no gas whatever has been furnished to the premises.

Plaintiff company purchased the property in 1939 and utilizes it for the manufacture of textile specialty fabrics, having equipped it with extensive machinery and appliances for that purpose and employing about 300 persons. Neither at the time of the purchase nor thereafter did plaintiff have any knowledge of the existence of the abandoned pipe, which was never used for *its* service, nor, as already stated, for any purpose whatever after 1928.

On May 24, 1942, the factory building and its contents were severely damaged by a violent gas explosion and a number of additional minor explosions which occurred intermittently thereafter during the succeeding

two hours; these explosions were followed by fire, and, what with the damage from the explosions themselves and from the fire and the water used in quenching it, and the expenses incurred in operations undertaken to ascertain the cause of the occurrence, plaintiff suffered a loss estimated by it at $49,081.09, to recover which the present action was brought. It was discovered that the disused pipe which had originally served the residence was rusted through and full of holes, and it is not contested that the gas which caused the explosions escaped from that pipe.

The jury found a verdict in favor of plaintiff for $20,000. Plaintiff asked for a new trial, which was granted by the court on the ground that the verdict was inadequate. Defendant filed a motion for judgment n. o. v. which the court refused. The present appeals are by defendant from that refusal and from the allowance to plaintiff of a new trial.

The standard of care required of a company manufacturing and distributing gas is well established. In dealing with this dangerous substance a high degree of vigilance must be exercised and every reasonable precaution taken to guard against accident. While its measure of responsibility is not that of an insurer, the company is liable for an explosion when it knew, or by the exercise of ordinary care should have known, of a defect in its pipes or mains. It is not sufficient for it merely to install proper lines and fixtures but it is required to maintain them, and this entails inspection from time to time and watchfulness for conditions incident to natural wear and tear: *Heh v. Consolidated Gas Co.*, 201 Pa. 443, 447, 50 A. 994, 995; *Hartman v. Citizens Natural Gas Co.*, 210 Pa. 19, 21, 59 A. 315, 316; *Shirey v. Consumers' Gas Co.*, 215 Pa. 399, 401, 64 A. 541; *Stephany v. Equitable Gas Co.*, 347 Pa. 110, 113, 31 A. 2d 523, 525.

Defendant, while admitting these general principles, claims that it was under no duty to inspect or repair the

service pipe which was the cause of the trouble in the present instance because its responsibility for care ended at the curb line. Ordinarily this position would be well taken, because service pipes leading from the street to the consumer's property usually belong to him and are under his control and consequently there is no duty on the part of the gas company to inspect, maintain or repair them, that obligation resting exclusively upon the owner or tenant of the property: *Greed v. Manufacturers' Light & Heat Co.,* 238 Pa. 248, 251, 86 A. 95, 96; *Windish v. Peoples Natural Gas Co.,* 248 Pa. 236, 239, 93 A. 1003, 1004; *Pouder v. Peoples Natural Gas Co.,* 248 Pa. 242, 245, 93 A. 1005, 1006; *Hanley v. Peoples Natural Gas Co.,* 325 Pa. 6, 10, 188 A. 157, 158; *Stephany v. Equitable Gas Co.,* 347 Pa. 110, 113, 31 A. 2d 523, 525; *Soles v. Peoples Natural Gas Co.,* 48 Pa. Superior Ct. 84, 89. But this principle of non-liability on the part of the company in the case of a service pipe, as distinguished from its own mains, is not without exception, for if the gas company knows that there are defects in such a pipe, or is in possession of facts which should reasonably inform it that it is unsafe, it then becomes its duty to investigate the safety of the pipe before it continues to use it for the transportation of gas, and if it fails in that duty it becomes liable for any resulting accident. More specifically, if the company knows, or under the circumstances has reason to know, that a service line is rusted and corroded to such an extent as to permit gas to escape therefrom, it would be its duty either to notify the property owner to repair it, or to shut the gas off at the street in order to avoid the likely danger: *Windish v. Peoples Natural Gas Co.,* 248 Pa. 236, 140, 93 A. 1003, 1004, 1005; *Pouder v. Peoples Natural Gas Co.,* 248 Pa. 242, 245, 93 A. 1005, 1006; *Heller v. Equitable Gas Co.,* 333 Pa. 433, 436-438, 3 A. 2d 343, 344, 345; 24 Am. Jur. 687, § 32. As stated in *Stephany v. Equitable Gas Co.,* 347 Pa. 110, 113, 31 A. 2d 523, 525: "The company knows that it is dealing with

a dangerous agency and if it knows or should have known that the consumer's lines are not safe it is its duty to require the lines to be repaired or else to shut off the gas at the curb."

In the present case defendant is liable for the accident which occurred because the unusual facts imposed upon it an even greater measure of responsibility than that to which it would thus have been subject had it been continuing to furnish gas to the owner of the property. Here defendant maintained its gas under pressure in a service pipe which, by the exercise of the slightest, much less a high, degree of care, it would have realized was unsafe for the purpose. Its records showed the original installation and the location of the pipe, and, having this information, and knowing that this pipe had remained buried, unrepaired and uncared for during a period of almost 14 years, it should have shut off the gas at the curb or else disconnected the line at the main. The pipe had been definitely abandoned and served no useful purpose whatever as far as the property owner was concerned for plaintiff was no longer a consumer of the company's gas; defendant not only knew that the house which the pipe had supplied had long been torn down, but it had installed a new service pipe from another street into the factory building now erected on the premises. While the pipe itself continued, of course, to belong to the owner of the property, the gas in it belonged to defendant, and the only right that a gas company has to maintain or store its product under the surface of a private owner's ground is for the purpose of supplying the property with the gas contracted for by the owner or the tenant; when that purpose is not being subserved the company is subject to the same duty of inspection and care with respect to the service pipe as devolves upon it in respect to the pipes which it itself owns and uses in the conveyance and storage of its gas.*

---

* The learned trial judge placed liability upon defendant company principally on the ground that plaintiff was not aware of the

We do not mean to be understood as holding that whenever the service of an owner or tenant is temporarily discontinued it immediately becomes the duty of the company to shut off the gas at the curb or to disconnect the service pipe at the main; but where, as here, the service is permanently and unconditionally terminated, the property owner having therefore no further interest in or benefit from the maintenance of the supply of gas in the pipe, the gas company has no legal right to store it there, especially for an indefinite number of years as in the present instance. While its failure under such circumstances to cut the service off at the street may not in itself constitute negligence, there *is* imposed upon it the duty to exercise a high degree of care and to inspect, maintain and keep the service pipe in repair as long as it is so used, and for failure to observe this duty it must be held responsible for any resulting injury to innocent persons or their property: *Canfield v. West Virginia Central Gas Co.,* 80 W. Va. 731, 93 S. E. 815; *Castner v. Tacoma Gas & Fuel Co.,* 123 Wash. 236, 212 Pac. 283; *Swayzee v. City of Augusta,* 113 Kan. 658, 216 Pac. 265. From all of which it follows that the court would not have been justified in granting defendant's motion for judgment n. o. v.

As far as the award to plaintiff of a new trial is concerned, it has many times been declared that when a court grants a new trial on the ground of inadequacy of the verdict an appellate court, in the absence of a gross abuse of discretion, will not interfere: *Schwartz v. Jaffe,* 324 Pa. 324, 188 A. 295; *Pretka v. Wilson,* 325 Pa. 491, 190 A. 722; *Carpenelli v. Scranton Bus Co.,* 350 Pa. 184, 187, 38 A. 2d 44, 45. The jury was not obliged, if it had reason for doubt, to allow all of the pay-roll expenditures and other items of damage claimed by plain-

---

existence of the pipe. We do not regard that circumstance as material, the real basis of defendant's liability being as above stated.

tiff or to appraise the value of the property damaged or destroyed at the same figures as those asserted by plaintiff, even though the testimony offered by plaintiff as to those matters was not contradicted. But since, in the considered judgment of the trial court, the amount awarded by the jury was wholly arbitrary and fell far short of doing justice to plaintiff's claim, its grant of a new trial was fully warranted.

Orders affirmed.