Roadman *v.* Bellone, Appellant.

484

Argued September 30, 1954. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Fred B. Trescher,* with him *Paul M. Robinson* and *Robert Wm. Garland,* for appellants.

*Avra N. Pershing, Jr.,* and *Robert W. Smith, Jr.,* with them *Henry B. Waltz, Jr.,* and *Smith, Best & Horn,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, November 8, 1954:

The plaintiff, Sherman L. Roadman, brought this action in trespass to recover for personal injuries and property damage arising out of a collision between his automobile and a police patrol car owned by the defendant, City of Jeannette, and operated by defendant, James Bellone, a police officer of that city. The court entered a compulsory nonsuit as to the third defendant, West Penn Power Company. After trial the jury returned a verdict in plaintiff's favor against the City of Jeannette and Bellone in the sum of $27,000. These two defendants filed motions for judgment non obstante veredicto and for new trial and also a motion to take off the nonsuit entered in favor of their codefendant West Penn Power Company. The plaintiff, satisfied with the outcome, filed no motions. From the judgment entered on the verdict Bellone and the City of Jeannette appeal.

In passing on the defendants' motion for judgment n.o.v. it is too well settled to require the citation of cases that in reviewing the evidence we must consider all the facts and reasonable inferences to be drawn therefrom in a light most favorable to plaintiff's cause.

The accident occurred on February 21, 1952, at about 2:30 A.M. The plaintiff was proceeding eastwardly on a 31 foot wide road which runs from the Borough of Irwin, Pennsylvania to the City of Jeannette, Pennsylvania, through the Boroughs of Manor

and Penn. As he approached the dividing line between the Borough of Penn and the City of Jeannette he was driving between 25 and 35 miles per hour some 500 or 600 feet to the rear of two cars occupied by certain of his friends. The two cars in front of the plaintiff were riding almost abreast and apparently were racing each other. The plaintiff was about to enter the City of Jeannette from the Borough of Penn when he suddenly observed a police car, about 35 feet distant, entering the road upon which he was travelling, from a vacant lot on the north side of the highway. The police car entered the highway from a position in the vacant lot where it was concealed from the view of the plaintiff by a house west of the lot, built close to the road. Plaintiff testified that the police car was being operated without lights and gave no warning of its exit from the lot and entry upon the road. When the patrol car first came into his view, plaintiff immediately sounded his horn, applied his brakes and turned to the right. The police car cut diagonally across the road in the direction of plaintiff's lane of traffic. The two cars collided, whereupon the plaintiff was thrown from his car and landed a short distance south of a utility pole owned and maintained by the defendant, West Penn Power Company. His automobile was forced to its right and off the paved portion of the highway, striking the utility pole. Almost instantaneously an electrical transformer, weighing approximately 900 pounds, fell from the pole onto the plaintiff's car, and then in turn, on the plaintiff.

The defendant Bellone and his companion police officer, on the other hand, testified in effect that as they were driving west along the same road toward the Borough of Penn they noticed two cars approaching in the opposite direction at a high rate of speed. Bellone drove the police car into the vacant lot, turned

it around and waited a few seconds for the two cars in order to pursue them. Both police officers testified that the lights on their car were on low beam. The defendant Bellone admitted that the first time he saw the plaintiff's car was at the time of collision, although he could see a distance of at least 500 feet to his right, the direction from which the plaintiff was approaching. He gave no explanation as to why he failed to see it, permitting the conclusion that he did not look before or as he entered the highway.

Richard Sabo, a disinterested witness, who was driving westwardly about 100 yards behind the police car, largely corroborated the plaintiff's version of the accident. He also testified that the patrol car failed to give any audible warning to oncoming traffic of its intention to enter the highway.

The questions presented are: (1) Was there sufficient evidence of negligence upon the part of the defendants to submit to the jury? (2) Was the plaintiff guilty of contributory negligence as a matter of law? (3) Was the verdict excessive? (4) Was there sufficient evidence of negligence by the defendant, West Penn Power Company, to submit to the jury? (5) If so, was the power company's negligence a proximate cause of the injury?

Under Section 619 of The Vehicle Code of May 1, 1929, P. L. 905, as variously amended, the last amendment being the Act of August 24, 1951, P. L. 1368, 75 PS §212, a municipality is jointly and severally liable for damages caused by the negligence of its employe while operating its equipment upon a highway in the course of his employment. By virtue of other sections of the Act a police car operated in the chase or apprehension of violators of the law, or persons charged with or suspected of any such violation is exempt from the statutory limitations regarding speed (§1002(f), 75

PS §501); traffic signals (§1026(d), 75 PS §635); entries upon through highways (§1016(d), 75 PS §591), and, when operated upon official business they are exempt from the right-of-way rule (§1014(b), 75 PS §573), upon giving audible signal of their approach. These exemptions, however, are conditioned upon the vehicle being operated "with due regard for the safety of all persons using the highway", and they do not shield the driver or the city "from the consequences of a reckless disregard of the safety of others" or "from the consequences of an arbitrary exercise of the right of way": *Mansfield et al. v. Philadelphia et al.*, 352 Pa. 199, 42 A. 2d 549. Therefore it was incumbent on the plaintiff in order to recover to show recklessness or an arbitrary exercise of his right-of-way by the defendant police officer.

The record reveals that the plaintiff met his burden. Accepting as true the evidence adduced by the plaintiff, the jury would certainly be justified in concluding that the officer in entering a through highway from a vacant lot without any audible or visible warning of his approach was operating his car in a reckless manner. See *Mansfield et al. v. Philadelphia et al.*, supra. It was the jury's prerogative to choose between the two conflicting accounts for the evidence presented issues of fact properly determinable only by that fact-finding tribunal. Furthermore it is questionable whether the police officer was engaged in the type of emergency duty that would clothe him with immunity under the provisions of The Vehicle Code. We held in *Cavey, to use v. Bethlehem*, 331 Pa. 556, 560, 1 A. 2d 653, that the act of a policeman in pursuing and clocking a speeding automobile was not such an official emergency duty as to come within the exemption provisions of the statute.

Appellants contend next that the plaintiff, by his own admission as to his speed and the testimony adduced by the defendants regarding the distance he skidded, clearly demonstrates that he was exceeding the speed limit at the time of the accident and that this was the sole proximate cause of the accident. The difficulty with appellants' position is that for the purpose of this appeal we must assume that the jury rejected their testimony and accepted the plaintiff's. According to the plaintiff, when he first observed the patrol car he was still some ten feet within the confines of the Borough of Penn. The evidence discloses that signs were posted in Penn in accordance with The Vehicle Code, indicating a speed limit of 25 miles per hour. Although the City of Jeannette purportedly had the same speed limit, no signs were posted, and as a result the city's local ordinances or regulations would not be enforceable.[1]

The plaintiff testified that while in Penn Borough and just before entering Jeannette he was travelling "between 25 and 35 miles an hour". Assuming that this language is to be construed literally, and plaintiff under the most favorable interpretation thereof must be held to have been travelling in excess, however slightly, of the speed limit in Penn Borough, it was still for the jury, as it was instructed by the trial judge, to determine whether the speed at which plaintiff was travelling was a proximate cause of the accident. A

---

[1] The Vehicle Code provides, inter alia, with respect to local traffic signs: ". . . Local parking and other local ordinances, rules, and regulations shall not be enforceable against an alleged violator, if, at the time and place of the alleged violation, an official sign, giving notice thereof, is not posted conspicuously by the municipalities making the same, at points where any highway affected thereby joins other highways.". 1929, May 1, P. L. 905, as amended, 75 PS §682.

speed in excess of that legally permitted will not impose liability upon the driver of an automobile, unless it is shown that such speed was the proximate cause of the accident: *Wilson Freight Forwarding Co., Inc. v. Seal,* 367 Pa. 18, 29, 79 A. 2d 648; *Metz v. Pittsburgh Railways Company,* 135 Pa. Superior Ct. 534, 7 A. 2d 505; *Mulheirn v. Brown et al.,* 322 Pa. 171, 185 A. 304; *Collichio et ux. v. Williams,* 311 Pa. 553, 166 A. 857.

As to the distance which defendants claim the plaintiff's car skidded, Bellone and his companion police officer testified that they found and measured skid marks from the Borough of Penn to the point of impact and from there to the utility pole and that they were 140 feet and 48 feet respectively, or a total distance of 188 feet. The plaintiff testified that when he first saw the police car and applied his brakes he travelled about 35 feet before the collision and about 35 feet after the impact. The eye witness Sabo corroborated the plaintiff as to the latter distance. The case in this respect is similar to *Wermeling v. Shattuck et al.,* 366 Pa. 23, 29, 76 A. 2d 406, wherein we said: ". . . 'No fact based on *oral* testimony in a trial ever possesses the character of legal incontrovertibility until it receives the imprimatur of a jury's acceptance': . . .". We are satisfied in view of the conflicting estimates that it was the jury's function and not the court's to declare whether plaintiff was guilty of contributory negligence.

In support of their motion for a new trial the defendants contend that the verdict was excessive. We do not agree. The plaintiff, who was 28 years of age at the time of the accident, was employed by the Westinghouse Air Brake Company at a salary of $60 a week. He proved loss of earnings from the time of the accident to the time of trial, a period of 102 weeks, in the amount of $6,120. The evidence shows that the

plaintiff will also sustain future losses because of his inability to continue in the same type of employment. He suffered multiple fractures about the pelvic region, severe lacerations of his forehead and left thigh, and paralysis of both legs for a period of two weeks. Plaintiff was hospitalized for approximately six weeks and was afterwards confined to his parents' home for about two months and for many months was able to move about only on crutches. He incurred expenses totalling $2,090.75 for hospitalization and medical treatment and there was testimony that he will be required to expend additional sums in the future. His automobile was completely demolished, resulting in property damage of $1,000 after making allowance for salvage value. There can be no question that the plaintiff endured considerable pain and inconvenience, in fact he was still suffering pain at the time of the trial, almost two years after the accident. His testimony regarding extreme pain and suffering was corroborated by his father and his doctors. We are reluctant to interfere with the deliberate judgment of the jury regarding the amount of a verdict in a personal injury case which is supported by the opinion and approval of the trial judge and confirmed by the court en banc: *Huey et vir. v. Blue Ridge Transportation Company,* 350 Pa. 488, 491, 39 A. 2d 602.

The only remaining matter to be considered is the refusal of the court below to take off the compulsory nonsuit in favor of West Penn Power Company. The record shows that the defendant power company's transformer was hung upon a cross arm, fastened to a pole located 5.7 feet from the edge of the southerly line of the paved portion of the highway. The bottom of the transformer rested against a kicker arm or another cross arm designed to hold the transformer in a position perpendicular with the pole. Admittedly

the company did not bolt the transformer either to the pole or to the hanger arms and it is contended that this constituted negligence. Charles B. Downer, a staff engineer of the defendant company for 25 years, called by the plaintiff, testified that in his experience transformers of this type are not bolted to the pole or cross arm. There was other testimony adduced on behalf of plaintiff that the methods employed in installing the transformer were the ones customarily used in this business.

It is questionable whether there was sufficient evidence of negligence by the West Penn Power Company to submit to the jury and the refusal of the court below to take off the compulsory nonsuit as to that defendant might well be sustained on that ground. However, even if we should assume, arguendo, that the Power Company was negligent in its maintenance of the transformer, a recovery could not be permitted against it unless such negligence was a legal cause of the accident.

It is true that an intervening negligent act is not always a superseding cause which relieves an antecedent wrongdoer from liability for negligently creating a dangerous condition which results in injury: Restatement, Torts, §447. This section has been cited with approval in *Darrah v. Wilkinsburg Borough,* 318 Pa. 511, 178 A. 669; *Murray v. Pittsburgh Athletic Co.,* 324 Pa. 486, 188 A. 190; *Kline v. Moyer,* 325 Pa. 357, 191 A. 43; *Nelson v. Duquesne Light Co.,* 338 Pa. 38, 12 A. 2d 299; *Mautino v. Piercedale Supply Co.,* 338 Pa. 435, 13 A. 2d 51; *Brogan v. Philadelphia,* 346 Pa. 208, 29 A. 2d 671; *Styer v. Reading,* 360 Pa. 212, 61 A. 2d 382; *Malitovsky v. Harshaw Chemical Co.,* 360 Pa. 279, 61 A. 2d 846; *St. John v. Kepler,* 360 Pa. 528, 61 A. 2d 875; and *Levine v. Mervis,* 373 Pa. 99, 95 A. 2d 368. These cases have greatly modified the decision in *Stone v. Philadelphia,* 302 Pa. 340, 152 A. 550,

that an intervening negligent act operates as a superseding cause and insulates an antecedent tortfeasor from liability.

However, some intervening negligent acts which operate upon a condition created by an antecedent tortfeasor do constitute superseding causes and relieve him of liability. In determining whether an intervening force is a superseding cause we said in *Hendricks v. Pyramid Motor Freight Corp.*, 328 Pa. 570, 574, 195 A. 907, 909: "The answer to this inquiry depends on whether the [intervening] conduct was so extraordinary as not to have been reasonably foreseeable or whether it was reasonably to be anticipated." The Restatement, Torts, §435(2), (1948 Supplement, p. 736) says: "The actor's conduct is not a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to tne court highly extraordinary that it should have brought about the harm." Cf. Restatement, Torts, Penna. Annotations, §442. In view of the particular circumstances of this case,—including the recklessness with which the police car was operated, the location of the pole on private property, the force of the blow which moved the pole one inch from its base, and the fact the plaintiff was thrown out of his car and landed on the very spot on which the transformer fell, after glancing off plaintiff's car,—we conclude that the manner in which the Power Company maintained its transformer on the pole was not a legal cause of the plaintiff's injuries. These facts distinguish this case from *Nelson v. Duquesne Light Co.*, supra, upon which appellants principally rely. As the question is one of superseding cause, and there is no dispute as to the pertinent facts, the court may decide it as a matter of law: *Hendricks v. Pyramid Motor Freight Corp.*, supra; Restatement, Torts, §453.

Judgments affirmed.