Steele, Appellant, *v.* Peoples Natural Gas Company.

440

Argued October 3, 1956. Before Stern, C. J., Bell, Chidsey Musmanno and Arnold, JJ.

*Hymen Schlesinger,* for plaintiffs, appellants.

*William H. Eckert*, with him *Milton W. Lamproplos*, and *Smith, Buchanan, Ingersoll, Rodewald & Eckert*, for defendant company, appellee.

*Randall J. McConnell, Jr.*, with him *Dickie, McCamey, Chilcote, Reif & Robinson*, for additional defendant, Soltz, appellee.

*Thomas E. Barton*, Assistant City Solicitor, with him *J. Frank McKenna, Jr.*, City Solicitor, for defendant city, appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, November 12, 1956:

In this action plaintiffs seek redress for injuries sustained by them as the result of an explosion of gas which, they claim, was caused by the negligence of the defendants, Peoples Natural Gas Company and the City of Pittsburgh.

Plaintiffs all lived at 50 Crawford Street in Pittsburgh. The Gas Company maintained a curb box for the adjoining house at 48 Crawford Street which was located in the sidewalk and close to the divsion line between the two houses. The consumer's gas service pipe for the house at No. 48 commenced at the curb box, ran into the cellar vault of that house beneath the sidewalk, through the front wall of the vault and along that wall to the inlet side of the gas meter, then from the outlet side of the meter along the front wall and a side wall, through the rear wall of the vault, and thence throughout the house.

On the night of April 24, 1952, one Underwood parked his automobile on the sidewalk in front of 48 Crawford Street directly over the curb box. Although there were supporting beams above the vault the

weight of the car caused the sidewalk to cave in with the result that the front end of the car crashed into the cellar vault of the 48 Crawford Street house. Either the car itself or a section of the sidewalk struck and broke the gas pipe at a point between the front wall of the vault and the inlet side of the meter; gas escaped from the broken end of the pipe for about 20 minutes and then somehow ignited and exploded.

The Gas Company was notified of the accident either about 20 minutes as plaintiffs claim, or 5 minutes as claimed by the Gas Company, before the explosion occurred, and it immediately dispatched an emergency man to the scene. He arrived shortly after the explosion but could not shut off the gas because Underwood's car was in the hole and over the curb box. As soon as the city fire department, which was only a few blocks away, was able to remove the car from out of the fire burning in the hole,—an operation which took about 20 minutes,—the Gas Company's employee shut off the gas at the curb box.

Plaintiffs produced testimony, which was contradicted by the Gas Company, that the sidewalk in front of 48 and 50 Crawford Street was cracked and that there was a depression in the concrete paving three or four feet long, of that same width, and ankle deep, and that this condition had existed for nine years prior to the accident. There was also testimony by the tenant of 48 Crawford Street, which was likewise contradicted by the Gas Company, that after the accident, and just before the explosion, he had noticed that the broken pipe was rusted and "egg-shell thin." He also testified that some of the bricks had fallen from the ceiling of the vault some time before the accident.

Defendants brought in as additional defendants Jacob Soltz, a former owner of the house at 48 Craw-

ford Street, Mitchell Northington, the tenant of that property, and Clifton Underwood, the parking of whose automobile had brought the accident to pass. The jury returned a verdict in favor of both the defendants and the additional defendants. Plantiffs' motions for a new trial and for judgment n.o.v. were refused, from which action of the court below they appeal.

Plaintiffs' claim against the City is based on the alleged long-existing defective condition of the sidewalk, of which, they contend, the City had at least constructive if not actual notice. It did not appear, however, that the sidewalk was not safe for the only pur-pose for which it existed, namely, to support proper users thereof. A sidewalk is not designed to bear the weight of a parked automobile, and the City was not obliged to anticipate that it would be subjected to any such improper purpose, the only duty of the City being to keep it in a reasonably safe condition for the use of pedestrians: *Dunkerton v. North Braddock Borough*, 330 Pa. 89, 198 A. 677; *Schramm v. Pittsburgh*, 337 Pa. 65, 9 A. 2d 373; *Aloia v. City of Washington*, 361 Pa. 620, 65 A. 2d 685. If the depression claimed by plaintiffs actually existed, and if a pedestrian had slipped or fallen into it, liability of the City might well have resulted. But that is not the kind of accident that occurred in the present case and the court might properly have given binding instructions in favor of the City of Pittsburgh, and also, for the same reason, in favor of the additional defendants Soltz and Northington.

Plaintiffs' claim against the Peoples Natural Gas Company is apparently based upon three alleged grounds: (1) that the Company's original installation of the meter was improper; (2) that it should have discovered that the pipe had been worn thin; and (3)

that it did not respond quickly enough when notified of the accident and did not shut off the gas as promptly as it should have done.

As to the first of these charges, plaintiffs assert that a rule of the Public Utility Commission required that urban meters should be installed inside of the building, but, if necessary to locate them outside, they should be enclosed by some kind of protective device. Assuming, arguendo, that the location of the meter in the vault of 48 Crawford Street was not a compliance with the rule, nevertheless it is obvious that, no matter where the meter were placed, the consumer's gas pipe would have had to run underneath the sidewalk from the curb to the house, and would therefore have been broken by the caving in of the sidewalk. The failure to enclose the meter in a protective device had no causative relation whatever to the happening of the accident. Presumably that provision of the rule is merely for the protection of the meter against the weather. Violation of a statute or ordinance is not a ground of liability unless it is the proximate and efficient cause of an accident which is of the type the legislative enactment was designed to prevent: *Shakley v. Lee,* 368 Pa. 476, 84 A. 2d 322. Nor did the testimony establish that either the meter or the pipe connected with it was improperly supported in view of the fact that it could not have been anticipated that the sidewalk and an automobile would fall in to break it.

As to plaintiffs' contention that the Company should have taken cognizance of the alleged worn condition of the pipe, a gas company is not responsible for the condition in which the pipes in a customer's building are maintained; it is not under any duty to inspect or repair the service line and connections from

the curb to the house: *Greed v. Manufacturers' Light and Heat Company*, 238 Pa. 248, 86 A. 95; *Windish v. Peoples Natural Gas Company*, 248 Pa. 236, 93 A. 1003; *Hanley v. Peoples Natural Gas Company*, 325 Pa. 6, 188 A. 157; *Stephany v. Equitable Gas Company*, 347 Pa. 110, 31 A. 2d 523. It is true that when the company has notice or knowledge of a leak or defect in a consumer's line its duty is either to notify the owner or occupant to repair the leak or defect or to shut the gas off at the street in order to avoid the likely danger: *Windish v. Peoples Natural Gas Company*, 248 Pa. 236, 93 A. 1003; *Heller v. Equitable Gas Company*, 333 Pa. 433, 3 A. 2d 343; *Goodman & Theise, Inc. v. Scranton Spring-Brook Water Company*, 352 Pa. 488, 43 A. 2d 111. Here the Gas Company did not install or own the pipes in the house at 48 Crawford Street and it had no control over them; it was never notified that they were rusted or weak or in any dangerous or unsafe condition, and the fact that it may have regularly inspected the meter did not impose upon it the duty of examining or inspecting the pipes.

Finally, as to plaintiffs' third contention in regard to the Gas Company's liability, the evidence established the fact that it responded to the notification of the accident with reasonable promptitude; however, that question is unimportant because, even after the Company's employee arrived on the scene it still took some 20 minutes for the fire department, which had been trying to extricate the automobile, to succeed in removing it so as to make it possible to shut off the gas at the curb box, there being no testimony that it would have been practical to do this at any other point.

What may be regarded as the controlling feature of the case as a whole is that none of the defendants, nor the former owner and the tenant of 48 Crawford

Street who were the additional defendants, can be held responsible for failure to anticipate the illegal act of Underwood which was the real cause of the accident that resulted in plaintiffs' injuries: *Helm v. South Penn Oil Company*, 382 Pa. 437, 114 A. 2d 909. In parking his automobile upon the sidewalk Underwood violated an express provision of section 1020 of The Vehicle Code of May 1, 1929, P. L. 905, as amended, and such violation constituted negligence on his part per se: *Ashworth v. Hannum*, 347 Pa. 393, 32 A. 2d 407; *Bricker v. Gardner*, 355 Pa. 35, 48 A. 2d 209. That negligent act was, under well established principles of law, a superseding cause constituting the proximate cause of the accident and relieving defendants and additional defendants from liability for any prior negligence on their part, even assuming, contrary to what has heretofore been said, that any such negligence existed: *Kline v. Moyer and Albert*, 325 Pa. 357, 191 A. 343; *Hendricks v. Pyramid Motor Freight Corp.*, 328 Pa. 570, 195 A. 907; *Ashworth v. Hannum*, 347 Pa. 393, 32 A. 2d 407; *Johnson, Admr. v. Angretti*, 364 Pa. 602, 73 A. 2d 666; *Guca v. Pittsburgh Railways Company*, 367 Pa. 579, 80 A. 2d 779; *Roadman v. Bellone*, 379 Pa. 483, 108 A. 2d 754; *DeLuca v. Manchester Laundry and Dry Cleaning Company, Inc.*, 380 Pa. 484, 112 A. 2d 372.

Since the evidence and the law of the case show no liability on the part of defendants and additional defendants other than Underwood, it becomes unnecessary to consider the various alleged trial errors of which plaintiffs complain: *Fornelli v. Penna. R. R. Co.*, 309 Pa. 365, 164 A. 54; *Brogan v. Philadelphia*, 346 Pa. 208, 29 A. 2d 671; *Fritz, Admrx., v. York Motor Express Company*, 358 Pa. 398, 58 A. 2d 12; *Carroll v. Pittsburgh*, 368 Pa. 436, 84 A. 2d 505; *Sarne v. Baltimore*

& *Ohio Railroad Company,* 370 Pa. 82, 87 A. 2d 264. But plaintiffs are entitled to a new trial as to Underwood if they so desire.

The judgment in favor of each defendant and each additional defendant other than Underwood is affirmed. The judgment in favor of the additional defendant Underwood is reversed and, as to him, a new trial is granted.

---

DISSENTING AND CONCURRING OPINION BY MR. JUSTICE MUSMANNO:

I concur in that part of the decision of the Majority which grants a new trial against the defendant Clifton Underwood, and dissent from that part of the decision which denies a new trial in the plaintiffs' actions against the remaining defendants.