## Commonwealth v. Lee

*Richard P. Steward*, for Commonwealth.
*Wallover & Barrickman*, for defendant.

McCREARY, P. J., February 25, 1957.—On June 21, 1956, one of the police officers of the Borough of Monaca, Beaver County, filed an information against the above named defendant charging that on May 29, 1956, at Monaca, Ninth Street, defendant did then and there "unlawfully operate a motor vehicle bearing Pennsylvania Registration No. N730B upon Ninth Street a public highway in the Borough of Monaca, County of Beaver and State of Pennsylvania, in violation of Section 1212 Sub Section (c) of the Vehicle Code of Pennsylvania, by then and there making a turn at said in-

tersection where an official sign is erected prohibiting such turn at the time of making same, this sign being erected in accord with the Borough Ordinance 277 Article I, Section 2."

Defendant waived a hearing and the matter came before the court for determination on January 4, 1957.

Before any witnesses were called, defendant filed and argued a motion to quash, assigning as basis for the motion the following reasons:

"1. The defendant is charged with making a turn on to Ninth Street, a public highway in the Borough of Monaca, County of Beaver and State of Pennsylvania, in violation of Section 1212, sub-section (c) of the Vehicle Code of Pennsylvania, whereas said section and said sub-section do not set forth any reasons whatsoever.

"2. The said information does not charge any violation under any Borough Ordinance of the Borough of Monaca, Beaver County, Pennsylvania.

"3. The said information does not charge the defendant with any violation of any Statute of the Commonwealth of Pennsylvania or any Ordinance of the Borough of Monaca, Beaver County, Pennsylvania."

The court reserved its decision on the motion to quash and required that the hearing be proceeded with. At the end of the Commonwealth's case defendant demurred to the evidence, and we now have the matter before us for determination.

We decline to determine the matter on the basis of the motion to quash because, while the information appears to be inartfully drawn, there is nothing on the face of the information which would justify us in concluding that the motion should be granted. Leaving out all reference to the sections of The Vehicle Code and of the borough ordinance alleged to have been violated, the information does charge that defendant did "unlawfully operate a motor vehicle upon a public highway in the Borough of Monaca by making a turn

on to Ninth Street where an official sign is erected prohibiting such turn at the time of making the same". However, when the Commonwealth had concluded its proofs, it was perfectly apparent that no offense is charged in the information for the reason that neither section 1212(c) of The Vehicle Code nor section 2 of article I of Monaca Borough Ordinance No. 277 define any offense.

Section 1212 of The Vehicle Code of May 1, 1929, P. L. 905, as last amended, 75 PS §742, merely outlines the procedure for enforcement of local ordinances. It contains not one word defining any offense.

Section 2 of article I of Ordinance No. 277 likewise lacks definition of any offense. No one could know by reading this article and section of Ordinance No. 277 with what offense he was charged, because it defines no offense; it merely provides that:

"POLICE COMMITTEE OF COUNCIL AUTHORIZED TO ADOPT EMERGENCY REGULATIONS.

"The Police committee of Council is hereby empowered to make and enforce regulations necessary to make effective the provisions of this ordinance and to make temporary regulations to cover emergencies or special conditions, provided any such regulations are not inconsistent with the provisions of this ordinance."

There is nothing wrong with the ordinance; the fault lies in making an information against a man for violation of a particular section of an ordinance, which section defines no offense. If the police committee of the Borough of Monaca did adopt regulations necessary to make effective the provisions of the ordinance itself, or did make temporary regulations to cover an emergency or a special condition, there was no evidence of it at the hearing. As a matter of fact the borough secretary testified that the "no left turn" sign guarding the approach of vehicular traffic from the west on Washington Avenue at the intersection of Washington Avenue and Ninth Street, and the "no right turn"

sign guarding the approach of vehicular traffic from the east at said intersection were erected by the borough labor force at the direction of the burgess, without one single item of testimony that the erection of the signs was authorized by the police committee of council. The borough council has the right to delegate such authority to the police committee, but the police committee must act, and there must be proof of the fact that the police committee did act: Borkowski v. Borough of Conshohocken, 55 Montg. 381.

The real difficulty with the Commonwealth's case, however, is to be found in the fact that the testimony shows that the "no left turn" and the "no right turn" signs erected at the corner of Ninth Street and Washington Avenue in the Borough of Monaca were not official signs. The borough secretary testified that they were made out of paper and were of an odd size and shape, differing materially from the size and shape of official signs defined by the Secretary of Highways in the "Manual of Regulations for Official Traffic Signs Signals and Markings, 1955 Traffic Division". The signs were never approved by the Department of Highways.

There has always been a grave question in the minds of all municipal solicitors as to whether the municipality is restrained by The Vehicle Code from erecting signs or markings or traffic signals on State highways only, or whether The Vehicle Code prohibits the municipality from erecting signs on its streets beyond the limits of designated State highways. Many municipal solicitors have taken the position that the municipality is authorized to erect signs of its own make and design on streets within the limits of the municipality so long as those streets are not official State highway thoroughfares. With this we cannot agree. The muncipality has no authority to pass any ordinance regulating any traffic on any of its streets except as authorized by The Vehicle Code.

The highways of this Commonwealth have always been regarded as the property of the people of the entire State rather than of a particular district, and therefore under the absolute direction and control of the State: Irvine v. Borough of Mechanicsburg, 88 D. & C. 120. Accordingly The Vehicle Code, as last amended, June 30, 1951, P. L. 980 sec. 1, 75 PS §663, provides that local authorities shall have no power to enact or enforce any ordinance contrary to the provisions of the code, with certain exceptions, and among those exceptions is the right to "regulate the kinds and classes of traffic and its turning on certain highways at all or certain hours". However, the act further provides, 75 PS §682, that no such ordinance may be enforced against an alleged violator unless an *official sign* giving notice of the ordinance is conspicuously posted by the municipality making the same at points where the highway affected thereby joins another highway. The act further provides, 75 PS §681, that the Secretary of Highways of the Commonwealth shall make and publish regulations for the design of all *official signs*.

At the hearing of the case we are now considering, no evidence was offered to prove that the signs at the corner of Washington Avenue and Ninth Street were official signs conforming with the regulations published by the Secretary of Highways.

What are the regulations published by the Secretary of Highways in the Manual of Regulations under the mandate of the legislature, set forth in section 1105 of The Vehicle Code, as last amended, 75 PS §681(*a*)?

In the 1955 Manual, at page 1, under the heading "Legal Authority", the Secretary of Highways says:

"In accordance with Section 1105 of The Vehicle Code, the Secretary of Highways has control over de-

signs of all signs, signals and markings on highways throughout the Commonwealth of Pennsylvania.

"No other signs or signals, except those approved by the Secretary of Highways may be legally sold in the Commonwealth of Pennsylvania.

"The regulations contained in the Manual apply to the use of signs, signals and markings on local roads and streets as well as on State Highways. Signs and signals which have not been approved by the Secretary of Highways, shall not be used and cannot be legally enforced."

In the case we are considering it would appear that the paper signs "no left turn" and "no right turn," erected at the intersection of Washington Avenue and Ninth Street in the Borough of Monaca on authority of the burgess, were manufactured by the borough. The regulations adopted by the Secretary of Highways provide, page 2:

"Any municipality desiring to manufacture traffic signs in its own sign shop is permitted to do so, provided that the signs comply with the standards described herein. A sample sign of each type manufactured shall be submitted to the Department of Highways Materials Testing Laboratory, 1118 State Street, Harrisburg, Pennsylvania, for approval, and permits will be issued for all signs meeting the requirements. . . .

"A permit number will be issued for each type of sign approved, and the manufacturer shall stamp Permit No. . . . . on the back face of each sign sold."

Obviously the paper signs erected by the borough in the case we are considering did not meet the requirements of this regulation.

Under the heading Standardization of Design, the Secretary of Highways made a regulation as follows, page 2:

"Signs erected on any highway in this Commonwealth shall conform to the standard designs set forth in this Manual. The designs follow the nationally recognized and recommended standards for traffic control devices. It is mandatory that each traffic sign installation will be recognized and instantly understood at a glance. not only by Pennsylvania motorists, but by motorists from other states as well."

At page 51 of the Manual the Secretary of Highways sets forth the specifications for "turn prohibition signs". These signs must be 18 inches wide by 24 inches high. The signs alleged to have been disobeyed by defendant did not conform to this regulation.

The Supreme Court of Pennsylvania recognized the validity of section 1106 of The Vehicle Code, 75 PS §682, in the case of Roadman v. Bellone, 379 Pa. 483. The court there decided that local parking, and other local ordinances, rules and regulations shall not be enforceable against an alleged violator if, at the time and place of the alleged violation, an *official sign*, giving notice thereof, is not posted conspicuously by the municipality making the same, at points where any highway affected thereby joins another highway.

Since no official signs were posted in accordance with section 1106 of The Vehicle Code, supra, the borough's regulation is not enforceable against defendant, an alleged violator.

Accordingly, defendant's demurrer must be sustained.

Entertaining these views, we make the following

*Order*

Now, February 25, 1957, defendant's demurrer to the Commonwealth's evidence is sustained and defendant is released from his recognizance; costs to be paid by the County of Beaver.