Sarne, Appellant, *v.* Baltimore & Ohio Railroad Company.

Argued November 20, 1951. Before DREW, C. J., STERN, STEARNE, LADNER and CHIDSEY, JJ.

*Milton M. Borowsky,* with him *Freedman, Landy & Lorry,* for plaintiffs.

*Ralph S. Croskey,* with him *John J. Dautrich* and *Croskey & Edwards,* for defendants.

OPINION BY MR. JUSTICE CHIDSEY, March 24, 1952:
This case arose out of two actions in trespass tried at the same time, brought respectively by Frank Sarne

and Walter C. Maddox, against five defendants. The defendants are the Baltimore and Ohio Railroad Company (hereinafter called the Railroad Company), Lee A. Hauser, an individual trading as Hauser Construction Company (hereinafter called Hauser), L. E. Winter Co., Inc. (Winter), Raymond Concrete Pile Company (Raymond), Domenic Rosati, Louis Rosati, James Rosati, Robert Rosati and Romolo Rosati, individually and as copartners in the firm of Rosati and Son (Rosati). The trial at which the defendants offered no evidence resulted in verdicts in favor of both plaintiffs against Hauser and Raymond—for Sarne in the sum of $25,000 and for Maddox in the sum of $2,500. The jury found in favor of the other defendants, the Railroad Company, Winter and Rosati. Hauser and Raymond filed motions for judgment *non obstante veredicto* and a new trial which were denied. Plaintiffs filed motions for a new trial against the Railroad Company and Rosati. The lower court of its own motion granted a new trial as to all parties.

Hauser and Raymond appeal and assign as error the refusal of their motions for judgment *non obstante veredicto* and the grant of a new trial. Winter and the Railroad Company assign as error the grant of a new trial. The plaintiffs assign as error the grant of a new trial to Hauser and Raymond. Rosati took no appeal.

Plaintiffs were injured on May 5, 1949 while working as laborers in the Railroad Company's roundhouse located at 38th and Jackson Streets, Philadelphia, when a section of an overhead steam pipe fell on them. This asbestos covered steam pipe which was four inches in diameter ran around the top of the roundhouse about twenty or thirty feet above the floor and five or six feet from the ceiling. It was suspended from the ceiling by rods which hooked into eyes, the eyes in turn being fastened into the rafters. These rods were then

attached to the pipe by encircling collars. The distance between the rods was about ten feet. The purpose of the pipe was to supply heat to the building and in order to accomplish this it was connected by smaller pipes to the radiators which were along the walls.

The Railroad Company being desirous of renovating and altering the roundhouse, entered into a written contract with Hauser, a general contractor. Hauser then employed as subcontractors Rosati, Raymond and Winter. Rosati's specific job was to remove concrete which was in the engine pits of the roundhouse so that the pits could be extended. Removal of this concrete was to be done by a clam shell attached to the boom of a crane, but due to the depth of the concrete, it became necessary to utilize manual labor. Rosati obtained this manual labor from Eastern Construction Co., not a defendant here, and the plaintiffs, who worked with pick and shovel and jack hammer, were engaged in this work when they were injured. Raymond was to drive casings into the ground inside the roundhouse. For this they had a pile driver with a boom and rack through which a four-ton hammer was raised and lowered to pound the casings. Winter was hired to dismantle the radiators which were attached to the steam pipe which fell. In order to complete this work it was necessary to detach the smaller pipes which connected the radiators to the overhead steam pipe. These three subcontractors carried on their work simultaneously.

The evidence showed that the Railroad Company continued, after the renovation started, to run engines into the roundhouse where they took on water and were greased. There was an intimation in the testimony that the steam pipe supplied heat until the radiators were disconnected. The testimony showed that the employes of Raymond in the course of their work hit

the steam pipe with the hammer of the pile driver.  Because of the size of this machine in comparison with the available space inside the roundhouse, the body of the machine and the operator of it were outside the wall and the hammer inside, being operated through openings in the roof.  There was also testimony that employes of Raymond placed ropes around the steam pipe and pulled it to one side.  The theory as to negligence of Winter was that its employes would shake the steam pipe during the process of removing the radiators and that some of his men beat the tees which connected the pipes running from the steam pipe to the radiators while dismantling them.  There was testimony to this effect.  There was also evidence that the operator of the crane and clam shell employed by Rosati struck the pipe with the boom of the crane.

Ordinarily, if the record shows that the interests of justice require a new trial as to all defendants—and the lower court so states—an order to that effect will not be disturbed on appeal: *Lorenz v. Caste Development Company,* 368 Pa. 131, 81 A. 2d 887.  However, in the instant case we can find no reason substantiating such conclusion.  This long and complicated case was properly tried and fairly submitted to the jury.  Upon a careful examination of the reasons given in the opinion of the lower court for the grant of a new trial to all parties, we conclude that none of them support the action taken by it.[1]  We shall therefore proceed to ex-

---

[1] It should be noted that the lower court in this case very properly adopted the suggestion of this Court in setting forth with particularity the reasons for its action rather than relying upon the generality that the interests of justice require it: See Rules of Supreme Court No. 43 and *Bellettiere v. Philadelphia,* 367 Pa. 638, 81 A. 2d 857, where this Court, speaking through Mr. Justice HORACE STERN said, at p. 644: ". . . we would strongly impress upon trial courts the obvious desirability of stating in detail the exact reasons for which alone a new trial is granted instead of relying

amine the liability of the various defendants *seriatim* in the light of the jury's verdict.

The only evidence in the record which relates to the activities of the Railroad Company is the testimony of plaintiff Maddox that the "engines used to go in [the roundhouse] and they used to work on them, and grease them", of the plaintiff Sarne that they took on water, and some vague testimony that the heat for the roundhouse came from the steam pipe until the radiators were disconnected. This, we conclude, as did the jury, is insufficient to hold the Railroad Company responsible for the injuries to the plaintiffs and requires the application of the principle that where a jury has rendered a verdict for a defendant and it appears as a matter of law there is no liability on the part of that defendant, a new trial as to such defendant may not be granted: *Fornelli v. Penna. R. R. Co.,* 309 Pa. 365, 164 A. 54; *Brogan v. Philadelphia,* 346 Pa. 208, 29 A. 2d 671; *Fritz, Admrx., v. York Motor Express Company,* 358 Pa. 398, 58 A. 2d 12.

Plaintiffs argue that the above summarized testimony establishes that the Railroad Company did not discharge its duty to the plaintiffs as invitees in that it did not as owner and occupier keep the premises in a safe condition. The difficulty with this position is the paucity of proof of control possessed or exercised by the Railroad Company. There was no evidence of *any control* by it over the manner in which the work was to be done. Such evidence is necessary in order to hold the Railroad Company responsible: *Allen v. Willard,* 57 Pa. 374; *Smith v. Simmons,* 103 Pa. 32, 36; *Silveus v. Grossman,* 307 Pa. 272, 161 A. 362; and compare cases relied upon by the plaintiffs, *James Pender v. George Raggs et al.,* 178 Pa. 337, 35 A. 1135,

upon the mere generality that the 'interests of justice' require it, . . .".

(where the owner *forbade* the removal of a wall) ;
*Weldon v. Steiner,* 138 Pa. Superior Ct. 66, 10 A. 2d
19, (where the owner *insisted on a sign being erected*
after being told that the day was too windy for such
work). In both of these cases the *owners* not only
had control but exercised it affirmatively.

Plaintiffs also contend that the record showed that
the Railroad Company was responsible for the confin-
ing conditions under which the renovation was con-
ducted. Consequently, they argue, the pile driver had
to be operated from outside the building and this
caused the hammer to strike the steam pipe. There was
no evidence that the activity of the Railroad Company
within the building was the reason the pile driver op-
erator remained outside or that if he had been inside,
the hammer would not have struck the pipe.

As to Hauser, the general contractor, who was held
liable by the jury, we must sustain his appeal and here
enter judgment in his favor. His liability is predicated
on the supposition that he had control over the prem-
ises and the manner in which the work was to be done,
that he improperly exercised or failed to exercise that
control and that thereby the plaintiffs were injured.
Such control must exist or he is not liable : See *Tal-
larico v. Autenreith et al.,* 347 Pa. 170, 31 A. 2d 906.
However, if he was in control of the premises and the
work, plaintiffs' sole remedy would be statutory, under
the workmen's compensation legislation : *Swartz v. Con-
radis,* 298 Pa. 343, 148 A. 529.[2] With this dilemma

---

[2] This decision was based on Section 203 of the Workmen's
Compensation Act of 1915. This section was amended by the Act
of June 4, 1937, P. L. 1552, 77 PS §52. After the amendment was
declared unconstitutional (see *Rich Hill Coal Company et al. v.
Bashore,* 334 Pa. 449, 7 A. 2d 302), the Act of June 21, 1939, P. L.
520 was passed reenacting Section 203 of the original Workmen's
Compensation Act of 1915.

facing the plaintiffs, there is no necessity for reviewing the record and determining whether there was evidence from which the jury could have found Hauser was in control. If he was, plaintiffs' only remedy is not in this action. If he was not, there is no liability.

Relying upon the cases which hold that a plaintiff dependent upon circumstantial evidence must prove that the only reasonable inference is that the accident was caused by the negligence of the defendant,[3] coun- sel for Raymond contends that it was error for the lower court to deny his motion for judgment *non obstante veredicto*. The contention is that plaintiffs' evidence did not show that the *sole* reason for the fall of the pipe was the conduct of the employes of Raymond. The lower court also adopted this theory in its certificate as to sole reasons for granting a new trial when it said, "It therefore seems to us that the burden is upon the plaintiff to show either by positive evidence what caused this pipe to fall or by circumstances so strong as to preclude the reasonable possibility of any other cause. The mere fact that the plaintiffs' hy- pothesis as to what caused this pipe to fall is a plausi- ble one, the circumstances as set forth in the evidence show at least equally consistent theories that the pipe was caused to fall as the result of actions on the part of other parties not made responsible by the jury. For these reasons we believe that the verdicts against the Raymond Concrete Pile Company should not stand."

However, this is not a case where plaintiffs failed to produce evidence establishing negligence. Plaintiffs' theory was one of concurring negligence. The testi- mony that Raymond's employes permitted the heavy hammer on the pile driver to hit the pipe and that

---

[3] See *Sharble et al. v. Kuehnle-Wilson, Inc.*, 359 Pa. 494, 59 A. 2d 58; *Stauffer, Admr., v. Railway Express Agency, Inc.*, 355 Pa. 24, 47 A. 2d 817.

their other employes pulled the pipe to one side certainly was sufficient to allow the jury to decide Raymond was negligent. The language of this Court in *Smith v. Reading Transit & Light Co.*, 282 Pa. 511 at 516, 128 A. 439, is particularly apposite on this point: "The case, accordingly, falls within the line of decisions holding that where the negligence of two or more persons concur in causing an injury, they are jointly and severally liable and in such case one cannot excuse himself on the ground that the negligence of another figured in producing the result." And see *Gorman v. Charlson et al., (No. 1),* 287 Pa. 410, 135 A. 250; *Dobash v. Jeddo-Highland Coal Company,* 141 Pa. Superior Ct. 62, 14 A. 2d 842. There is no question of superseding cause here: See *Foley, Executrix, v. The Pittsburgh-Des Moines Company et al.,* 363 Pa. 1, 28, 68 A. 2d 517. We therefore cannot acquiesce in the grant of a new trial as to Raymond but the case must be remanded for entry of judgment on the verdicts against this defendant.

The liability of Winter was submitted to the jury because of the *oral* testimony that its employes would "shake the overhead pipe" when they removed the radiators and were "beating the tees" which connected the smaller pipes from the radiators with the steam pipe. It is well established that oral testimony is for the jury: *Satterwhite v. National Powder Company,* 362 Pa. 133, 66 A. 2d 278; *Nanty-Glo Boro. v. American Surety Co.,* 309 Pa. 236, 163 A. 523. Here the jury either refused to believe such testimony or concluded that the activities of Winter's employes did not weaken the steam pipe or contribute to its collapse. This Court on several recent occasions has reviewed the record and concluded that it was an abuse of discretion for the court below to award a new trial against an exculpated defendant: *Decker v. Kulesza,* 369 Pa. 259, 85 A. 2d

413; *Carroll v. Pittsburgh*, 368 Pa. 436, 84 A. 2d 505; *Stewart et vir. v. Ray et al.*, 366 Pa. 134, 76 A. 2d 628. There is nothing in this record which shows any reason why the jury should not have passed upon the question of the negligence of this defendant or that the jury was capricious in refusing to render a verdict against it. Under such circumstances it was error to grant a new trial as to Winter.

The only remaining question to be considered is found in the principal reason given by the lower court for the grant of a new trial to all of the defendants. This is that the trial judge withdrew from the jury's consideration the decision as to whether plaintiffs were free from contributory negligence.

A new trial will not be granted because the trial judge did not charge on contributory negligence where there is no evidence from which a jury could have found contributory negligence: *Knoble et ux. v. Ritter*, 145 Pa. Superior Ct. 149, 20 A. 2d 848; see *Hepler, Admrx., v. Hammond*, 363 Pa. 355, 69 A. 2d 95. The conduct of the plaintiffs in no way contributed to the accident. They were laborers engaged in digging out the concrete from the pits. They had nothing to do with the overhead pipe. What they were doing at the time the accident occurred was not a factor in producing the accident.

What we think the lower court meant to rely upon was the doctrine of assumption of risk for in this portion of its opinion it said: "At the same time, if the subcontractors were operating in such a negligent manner that an ordinarily reasonably prudent man would have foreseen the probable consequences of such act, and the plaintiffs continued to work under the hammered and bumped pipes, it would be a question for the jury as to their contributory negligence." However, we cannot conclude that the question whether plaintiffs as-

sumed the risk was for the jury.[4] The undertakings of the defendant subcontractors required operations in proximity to the steam pipe. They were chargeable with knowledge as to how the steam pipe was fastened and what it could withstand if interfered with in the prosecution of their work. Such knowledge was not possessed by the plaintiffs. They were pick and shovel laborers engaged in work *on the ground.* It was necessary for them to be where they were in order to perform their job. At the time of the accident no activity was taking place above the pit in which they and eight other laborers were excavating. Under the evidence it cannot be said that they knew or had reason to know that the interference with the pipe would cause it to fall upon them. The man who works with his hands has not the independence or comprehension of the entrepreneur.

The burden was on the defendants to produce evidence of contributory negligence or assumption of risk and they offered no evidence at all. We therefore hold that the trial judge was correct when he said in his charge, "in addition to that the plaintiffs must present to you a case that is free from any negligence on their own part which, however slightly, contributed to their own accident. I do not think you need concern yourselves with contributory negligence on the part of the plaintiffs in this case. There was no evidence of any negligence on the part of the plaintiffs which contributed to their own accident. So you may disregard that." It should be added that all of the defendants acquiesced in this instruction and none of them included it as a reason in support of their motions for new trial.

---

[4] In light of the jury's verdicts in favor of the Railroad Company and Winter and our decision with respect to Hauser, whether plaintiffs assumed the risk is as to them immaterial.

The order of new trial as to defendants Baltimore and Ohio Railroad Company, Lee A. Hauser, an individual trading as Hauser Construction Company, L. E. Winter Co., Inc. and Raymond Concrete Pile Company is reversed; judgment is here granted in favor of Lee A. Hauser, and the record remanded with direction to the court below to enter judgment on the verdicts in favor of the Baltimore and Ohio Railroad Company and L. E. Winter Co., Inc., and in favor of plaintiff Frank Sarne for $25,000 and in favor of Walter C. Maddox for $2,500 against Raymond Concrete Pile Company.