**Robert H. KREMSER, Executor of the Estate of Helen K. Curtis, Deceased**

v.

**John F. KEITHAN, M.D.**

**Civ. No. 9606.**

United States District Court, M. D. Pennsylvania.

March 31, 1972.

---

Beasley, Hewson, Casey, Kraft & Colleran, Philadelphia, Pa., Middleton & Roe, Harrisburg, Pa., for plaintiff.

Metzger, Hafer, Keefer, Thomas & Wood, Harrisburg, Pa., Markowitz, Kagen & Griffith, York, Pa., for defendant.

## MEMORANDUM

NEALON, District Judge.

In this malpractice action, the jury returned a verdict in favor of the defendant, Dr. John F. Keithan, and plaintiff, Robert H. Kremser, Executor of the Estate of Mrs. Helen K. Curtis, deceased, has moved for a new trial on the grounds that the Court erred in (1) allowing defense counsel to suggest to the jury that it give consideration to the effect of an adverse verdict on defendant's status or reputation; (2) asking defendant leading questions concerning the consent form signed by decedent at Centre County Hospital and, thereafter, refusing to charge the jury to disregard it in their deliberations, and (3) failing to charge the jury that it was not to consider the question of contributory negligence.

A brief summary of the evidence is appropriate. On September 11, 1965, Mrs. Curtis was involved in an automobile accident in which she sustained multiple fractures of the right arm and wrist.[1] She was admitted to the Centre County Hospital in Bellefonte, Pennsylvania, where she came under the care of defendant, a general surgeon. At the time of her admission, Mrs. Curtis signed a form captioned "Consent to Treatment and Operation" on which the language "and Operation" was crossed out and a notation entered "Does Not Wish Surgery". X-rays were taken which revealed a comminuted fracture of the upper arm (humerus) with jagged fragments and a comminuted fracture of the radius in the lower end of the forearm. Defendant reduced the fractures by manual manipulation and enclosed the right forearm in a short cast, placed her arm in a sling, and used "hanging overhead" traction to reduce the fracture of the upper arm. A pin was inserted into the cast to maintain traction in this position and also to elevate the hand to promote subsidence of the swelling in the arm. During her hospitalization, decedent complained of severe pain in her arm, which remained swollen, and, because of this, on September 14th the cast was split but not removed. Treatment by traction continued and on October 8th the cast was removed revealing patches of necrotic tissue and a blistering of the hand as well as a malpositioning of her wrist on the radial side. (Plaintiff contended that there was a malunion of the fractures, but this was disputed by defense testimony.) Plaintiff brought suit asserting that the damage to decedent's hand and arm resulted from improper care and treatment by defendant. Specifically, Plaintiff contended that defendant was negligent in (a) resorting to cast traction instead of skeletal traction, in which latter procedure a pin would be inserted through the bone and traction applied in that manner, (b) failing to use due care in administering cast traction, and (c) not removing the cast upon noticing the swelling in the arm and receiving complaints of severe pain from decedent.

Dr. Raymond G. Tronzo, an Orthopedic Surgeon, testified for the plaintiff and stated that, in his opinion, decedent did not receive reasonable medical care. Because of the swelling and contusion, he suggested that the "(f)irst thing

---

1. Mrs. Curtis died November 15, 1967 of causes unrelated to the accident.

would be to put her in a splint, ignore the fracture for the moment and watch what happens to the skin so that the skin would be exposed, and then after the swelling would subside, you can then reappraise the situation and decide when you're going to put the pins in the radius." (N.T. 167) Dr. Tronzo testified that the fracture of the radius should have been pinned so that the fragments would have been held in position and then the humerus could have been treated with a pin through the humerus itself or through the bone right next to it. He opined further that the dead tissue on decedent's arm and hand was due to abnormal pressure from the cast. The deposition of another Orthopedic Surgeon, Dr. Robert Sabol, was read into evidence on plaintiff's side wherein he stated that he first treated decedent at Divine Providence Hospital in Williamsport, Pennsylvania on October 11, 1965, and found areas of necrosis of the skin and ". . . fracture comminuted with malunited distal right radius, right wrist." (N.T. 229) However, in his opinion, the X-rays, showed that the alignment was satisfactory and that healing was progressing. He commented further that where there was a comminuted fracture of the wrist ". . . we would not expect to get any normal anatomical reduction." (N.T. 236) The deposition of Dr. Ernest G. Williamson, a General Surgeon, was also read, in which he said that he had treated decedent on November 1, 1965, and found necrotic skin as well as a marked deformity of her wrist toward the radial side.

On the defense side, Dr. Keithan testified that skeletal traction was inappropriate because the bone was so comminuted that there was no place to pin the bone properly, and, further, that the hand was so damaged by trauma that no other method of traction other than casting was advisable. In addition, he claimed that while he cut the cast, he did not remove it because reduction of the arm might be lost and a subsequent reduction would have to be done under general anesthesia with additional hazard to the patient. Dr. Francis V. Costello, an Orthopedic Surgeon who also treated decedent at Divine Providence Hospital, testified that cast traction is an acceptable type of treatment; that because decedent sustained a pulverized fracture of her wrist and a spiral oblique fracture of the upper arm, pinning was not called for because it would be like ". . . putting a pin through ice cream . . ."; that pinning is hazardous because of pin track infection; that where there is a pulverized fracture ". . . because of the cinders you always lose length of the radius, you get a prominence of the ulna . . ." (N.T. 338) with a limitation of motion and that this was ". . . a very good reduction for this type of fracture . . ." (N.T. 321); that the ulcerations on the arm were consistent with trauma; that the swelling was caused by the trauma, the removal of the cast, and the anticipated swelling after a cast is removed, and, finally, that defendant ". . . faced with what he was, he diligently and as good as any surgeon, general traumatic surgeon in any area, handled this case as it should have been handled." (N.T. 344) Dr. Esker William Cullen, Chief of the Surgical Department at Centre County Hospital, testified that he was called in for consultation by defendant and that he agreed with the course of treatment utilized by defendant, preferring the use of cast traction to skeletal traction. Furthermore, he contended that there was a satisfactory result and that "(e)verybody who has a fracture like this is going to get shortening". Upon the completion of the evidence and the closing arguments of counsel, the jury received the Court's charge and commenced their deliberations at 4:35 P.M. At 5:20 P.M. the jury was reconvened at the request of the Foreman of the jury who stated: "We would like a clarifica-

tion on the part of your charge that has to do with malpractice that starts, 'If there are several choices of treatment and the doctor follows any one of these . . .' " After receiving additional instructions, the jury retired at 5:45 P. M. and returned in five minutes at 5:50 P.M. with a verdict for the defendant. The present motion followed.

## I. THE COMMENTS OF DEFENSE COUNSEL TO THE JURY

Plaintiff contends that the remarks of defense counsel in his summation that the jury should consider defendant's status when he gets back to his hometown if he is found to be a malpractitioner and what it would do to the reputation he has spent years trying to develop, were prejudicial and require reversal. In support of this contention, plaintiff cites Stauf v. Holden, 94 So.2d 361 (Fla.1956) (Where the Trial Court charged the jury that the character and reputation of the physician is the most important matter at stake); Weinstein v. Prostkoff, 23 Misc.2d 376, 191 N.Y.S. 2d 310 (1959) (Where counsel persisted in a flagrant course of conduct designed to create an atmosphere that, because of her race, an adverse verdict would deprive her of her entire future); Flynn v. Stearns, 52 N.J.Super. 115, 145 A.2d 33 (1958) (Where court noted that defense counsel's reference in his summation to defendant's service to humanity and to the effect of an adverse verdict on his reputation, was improper although it was not necessary to determine whether they constituted plain error), and Jenkins v. Chase, 53 S.W.2d 21 (Mo.1932). (Where defense counsel's argument to the jury concerning the injury to defendant dentist's reputation was held improper but the court declined to pass on whether it constituted reversible error).

■ While counsel's statement in this case should not have been made, Mazer v. Lipshutz, 327 F.2d 42 (3d Cir. 1964), the question to be decided is whether it was of such substance as to prejudice plaintiff's rights and require the granting of a new trial. Fed.Rules Civ.Proc. rule 61, 28 U.S.C.A. provides that a new trial should not be granted unless refusal to take such action appears to the court inconsistent with substantial justice.[2] "The question to be resolved under Rule 61 is whether error in the course of a trial is substantial and prejudicial enough to warrant granting a new trial. If the error is harmless the motion will be denied in accord with the direction contained in this rule. A wide range of discretion rests with the trial court in granting or refusing a new trial . . ." 3 Barron and Holtzoff, Federal Practice and Procedure, § 1355, pp. 453, 454. Even "highly improper" statements by counsel for the government in the course of a long trial are not necessarily prejudicial or reversible when "reversal would not promote the ends of justice". Bethlehem Steel Co. v. National Labor Relations Board, 74 U.S.App. D.C. 52, 120 F.2d 641 (1941), citing United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 240, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). If I felt that plaintiff's case was prejudiced by counsel's remarks, I would not hesitate in awarding a new trial. But considering the length of the trial, the concentration of the evidence on the question of defendant's negligence, the absence of any testimony concerning defendant's reputation or the effect of a verdict on it, and the charge

---

2. Rule 61 reads, as follows:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

of the court properly identifying the issues to be considered and decided,[3] the momentary, terse reference by defense counsel to defendant's reputation in his summation to the jury did not rise to the level of substantial and prejudicial error. After presiding over 4 days and 593 pages of transcript, I am satisfied that the jury was not influenced by counsel's unfortunate comment.

## II. THE COURT'S REFUSAL TO CHARGE THE JURY TO DISREGARD THE CONSENT FORMS SIGNED AT CENTRE COUNTY HOSPITAL

■ As part of this contention, plaintiff's counsel complains that the court asked leading questions concerning the consent forms and that this constituted error. I am surprised that counsel raises this argument as he knew that, in a chambers' conference with the court, counsel for both parties disagreed as to whether defendant had referred to the consent form in his testimony concerning why he did not use skeletal traction. (N.T. 518–523). Subsequently, in response to questioning by the court, defendant stated that the only reason he decided to place the pin in the cast rather than in the bone was because of the danger of infection. (N.T. 529, 530) On redirect examination, however, he testified that he did take the consent form into consideration because he knew that he ". . . would have to go to the patient again to get consent if we decided on that minor surgical procedure." (N.T. 531) It was at that point, in order to obtain a clarification of his testimony, that the court pressed him for a more specific response. Indeed, as defense counsel suggests, if the

court led the defendant, it led him to plaintiff's benefit. The thrust of the inquiry was that defendant had not relied on the consent form, which was the position advanced by plaintiff's counsel. Further, the question of reliance on the consent form was not argued to the jury by defense counsel and received only cursory, casual mention by plaintiff's counsel in his closing to the jury.[4] As a consequence, the court did not charge the jury concerning the consent form, being satisfied that it was not seriously advanced as a factor justifying defendant's resort to cast traction instead of skeletal traction. Plaintiff's belated argument that "consideration of the consent form opened the door for improper entry by the jury into the realm of speculation" does not impress me and is rejected.

## III. REFUSAL TO CHARGE THE JURY TO DISMISS FROM ITS MIND ANY CONSIDERATION OF CONTRIBUTORY NEGLIGENCE

■ There was no evidence of contributory negligence and, therefore, the jury did not receive any instruction concerning it. Sarne v. Baltimore & Ohio R.R. Co., 370 Pa. 82, 91, 87 A.2d 264 (1952). Plaintiff complains, however, that the "consent form" issue could have served as a basis for the jury to conclude that decedent's refusal of surgery was an act of contributory negligence and, accordingly, the Court should have removed any doubt in that regard by an appropriate instruction. To me this is a completely unrealistic and unsupportable argument. The jury was adequately instructed in the law of negligence as it applied to this case and the injection of

---

3. The substance of the jury's request for supplemental instruction (which resulted in a verdict five minutes later) would appear to indicate that the jury was considering the law as it applied to defendant's negligence.

4. " . . . [H]e (Dr. Keithan) said he decided not to do it, first, he didn't feel it should be done and, second, he would have to worry about getting consent. But he never got to that. He never had to. They decided not to do it." (N.T. 542)

contributory negligence in the court's charge would do more to confuse than clarify.

Plaintiff's motion for a new trial will be denied.