Hanna M. AYOUB and Margaret Ayoub, his wife

v.

Dr. H. N. SPENCER, M.D.

Civ. A. No. 73–2833.

United States District Court,
E. D. Pennsylvania.

Jan. 27, 1976.

S. Gerald Litvin, Philadelphia, Pa., for plaintiff.

Barton L. Post, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

This medical malpractice action was tried before a jury and a verdict was returned in favor of defendant. The factual background of the case was as follows: On November 5, 1971, plaintiff Hanna Ayoub fell while at work. During the course of the succeeding nine months, plaintiff was treated by several physicians for back pain apparently resulting from his fall. Defendant is an

orthopedic specialist, and he examined plaintiff twice in December, 1971. One of the crucial issues at trial was whether, as plaintiffs contended, defendant scheduled no further appointments to examine Hanna Ayoub or, as defendant contended, an appointment was made for January 10, 1972, which plaintiff failed to keep. Exactly seven months after this crucial date, Hanna Ayoub became paralyzed from the waist down. The cause of the paralysis was a ruptured thoracic disc at T–7–8, the area of the back which had been giving plaintiff pain since his fall the previous November. The paralysis of the lower half of Hanna Ayoub's body is total and permanent.

Presently before the Court is plaintiffs' motion for a new trial. In addition to the general interests of justice, plaintiffs contend that there are five specific grounds which require that a new trial be granted. We will consider plaintiffs' arguments *seriatim.*

■ The first ground raised by plaintiffs is that the Court's charge to the jury "inextricably intertwined the issue of proximate cause of Dr. Spencer's conduct with the alleged contributory negligence of Mr. Ayoub." [1] We believe that plaintiffs adequately raised this objection at trial [N.T. 8–47] and, therefore, may now properly assign it as error. The Court also believes, however, that an examination of the entire charge shows that the jury was clearly and adequately instructed on the proper method by which to decide the issue of liability. If from the entire charge, read as a whole, it appears to the Court, as it does here, that the jury has been fairly and adequately instructed, then the requirements of the law are satisfied. *Smith v. Pressed Steel Tank Co.,* 66 F.R.D. 429, 433 (E.D.Pa.1975), *aff'd mem.,* 524 F.2d 1404 (3d Cir. 1975).

■ Subsequent to the point in the Court's charge where plaintiffs claim the "intertwining" took place [N.T. 8–22 to 8–23], the Court stated the proper deci-sional process as follows: "Even though Dr. Spencer was negligent, and even though what he did was a proximate cause of Mr. Ayoub's injury, *you may now take up the question* as to whether or not Mr. Ayoub himself was contributorily negligent." [N.T. 8–23 to 8–24.] (Emphasis added.) Later in the charge, the Court stated: "The plaintiff will be entitled to recover if you believe under the rules that I have given you he has made out his case in the standards that I have mentioned showing that Dr. Spencer was negligent and that was a proximate cause and *also* that he has not been contributorily negligent." [N.T. 8–35 to 8–36.] (Emphasis added.) Finally, in response to various objections by plaintiffs' counsel, the Court again charged the jury on the proximate cause issue. [N.T. 8–51 to 8–52.] There was no mention made of contributory negligence at that time. We do not believe that the instructions were confusing or misleading.

■ The second ground advanced by plaintiffs is that the Court failed in its charge to explain or define for the jury the standard by which it was to determine whether or not Hanna Ayoub was contributorily negligent. While plaintiffs did object to the issue of contributory negligence being submitted to the jury at all [N.T. 8–39 to 8–40], there was never any protest during the trial concerning the way in which the issue was presented in the Court's charge. Thus, on its face, Fed.R.Civ.P. 51 precludes plaintiffs from now seeking a new trial on that ground. However, the Third Circuit has tempered the impact of Rule 51 by holding that when the error is *fundamental,* an unobjected to charge may be attacked on a motion for new trial. *Morley v. Branca,* 456 F.2d 1252, 1253 (3d Cir. 1972); *accord, Stephenson v. College Misericordia,* 376 F.Supp. 1324, 1326 (M.D.Pa. 1974). A fundamental error has been committed if "the court's charge was totally inadequate to provide even the barest legal guideposts to aid the jury in rationally reaching a deci-

---

1. Brief in Support of Motion for New Trial, at 4.

sion." *McNello v. John B. Kelly, Inc.*, 283 F.2d 96, 102 (3d Cir. 1960). This Court does not believe that such an error was committed in this case.

■ The Court's charge explained to the jury that "the plaintiff's claim is based on negligence, that is, that the defendant failed to possess or employ the skill required of him as an orthopedic specialist or that he failed to act as a reasonable man under the circumstances, or both." [N.T. 8–13 to 8–14.] The Court explained the "reasonable man" negligence standard as follows:

> In defining negligence it is important to keep in mind that the mere happening of an accident does not without more mean that someone or anyone was negligent. Negligence is the failure of a reasonably prudent person to exercise due care under the circumstances. That's the kind of conduct that would apply to any person, the so-called reasonable person—yourself, myself, in conducting our normal affairs. It may also be the doing of something which a reasonably prudent person would not do under the circumstances. [N.T. 8–12.]

This standard was clearly tied to the question of contributory negligence in our instructions. The Court stated:

> [Y]ou will have to assess all the evidence and determine what happened and as a result of that you will then come to the key question, whether or not the plaintiff has met his burden of persuasion, proving by a preponderance of the evidence that Dr. Spencer failed to exercise the care of an orthopedic specialist or a reasonable man as I have described it. Similarly you will have to make the same judgment in respect to the defendant's contentions of contributory negligence. [N.T. 8–33 to 8–34.]

Earlier in the charge, the Court stated:

> The defendant in this case has raised the .issue of what we call contributory negligence. That is, if you should find that what was a cause of this was the plaintiff's own conduct, failure to go get other medical treatment, then you *may* conclude that he is barred from recovery because his own conduct was a substantial factor in bringing about the injury . . . . [N.T. 8–22.] (Emphasis added.)

The Court believes that the issue of Hanna Ayoub's contributory negligence was properly presented to the jury for decision and that a reading of the charge as a whole reveals that fair and adequate instructions were provided to aid the jury in its task.

Plaintiffs' third argument is that the Court's refusal to give three of their requested points for charge was error. [Plaintiffs' Request for Charge 6, 7; Plaintiffs' Supplemental Request for Charge 11.] Claiming Judge Cercone's opinion in *Hamil v. Bashline*, 224 Pa.Super. 407, 307 A.2d 57 (1973), as supporting authority, the requested points for charge asserted that a jury finding of negligence on the part of Dr. Spencer, coupled with a finding either that this negligence increased the risk of paralysis to Mr. Ayoub or that the paralysis resulted because of Mr. Ayoub's reliance upon Dr. Spencer's performance of medical services would, without more, establish causation and liability. *See Restatement (Second) of Torts* § 323 (1965).[2] This is a misreading of *Hamil* and a misstatement of the law in Pennsylvania. *Cohen v. Kalodner*, Pa.Super., 345 A.2d 235 (1975) (Cercone, J.). Although the Superior Court, in *Hamil v. Bashline, supra*, expressly accepted Section 323 of the Restatement (Second) of Torts as the

---

2. *Section 323 of the Restatement (Second) of Torts provides as follows:*

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking."

law of Pennsylvania, it also specifically stated how it interpreted that provision:

The defendant is not, under Section 323, liable merely for having increased the risk of death, but the evidence of the increased risk of death is under subsection (a) of that section for the jury's consideration on the factual issue whether the death was caused by defendant's failure to use reasonable care. 224 Pa.Super. at 417, 307 A.2d at 62.

▮ Plaintiffs still have the burden of proving causation in medical malpractice cases in Pennsylvania. This Court's charge on the issue of causation was as follows:

In deciding whether or not if there was negligence that negligence was a proximate cause of Mr. Ayoub's injury, you may consider together with the other evidence that you will consider in arriving at that determination whether or not the act or the failure to act by Dr. Spencer increased the risk of harm to Mr. Ayoub or whether the harm was suffered because of Mr. Ayoub's reliance upon the advice and treatment that Dr. Spencer gave him. [N.T. 8–52.]

We believe that this instruction conforms to the law as it now exists in Pennsylvania [3] and that there was no error committed in refusing plaintiffs' requested points for charge.

The fourth ground which plaintiffs assert is that it was erroneous to allow defense counsel to make statements during his closing argument based on hospital records which were not in evidence. During the trial, as part of his attempt to raise doubts about the credibility of Mr. Ayoub, defense counsel pointed out discrepancies between Mr. Ayoub's testimony at trial concerning the events leading up to his paralysis and the histories contained in the records of Lankenau Hospital and Thomas Jefferson University Hospital, which histories defense counsel alleged had been obtained from Mr. Ayoub. On cross-examination, Dr. Howard A. Richter testified that he had personally taken the handwritten admission history contained in Mr. Ayoub's Lankenau Hospital records and he read the history to the jury at the request of defense counsel. [N.T. 3–81 to 3–86.] When questioned concerning the Jefferson Hospital records, however, Dr. Richter explained to defense counsel that he had "never seen the inpatient record from Jefferson." [N.T. 3–86.] On redirect, Dr. Richter responded to a query from plaintiffs' counsel concerning the Jefferson Hospital record as is set forth

---

3. The Court notes that, in conformity with the actual language of Section 323, the above-quoted charge employed the disjunctive conjunction "or" when outlining the factors which might be considered by the jury in determining the question of proximate cause. There is some question, however, as to whether the Pennsylvania courts accept this position or require instead that both increased risk of harm *and* reliance be shown in order to obviate the common law necessity for evidence of reasonable medical certainty that the injury was in fact caused by defendant's failure to exercise reasonable care. In *DeJesus v. Liberty Mutual Insurance Co.*, 423 Pa. 198, 223 A.2d 849, 850 (1966), Section 323 was commented on as follows:

"The import of that section is that negligent performance or nonperformance must increase the risk of harm *and* that there must be reliance by the injured plaintiff upon the defendant's performing the service he has undertaken to render. Appellant's complaint fails to aver or establish either element and sets forth no cause of action." (Emphasis added.)

Despite the verbatim quotation of this passage in *Hamil v. Bashline, supra,* 307 A.2d at 61–62, the Superior Court's opinion also clearly states that:

"Subsections (a) and (b) [of Section 323] permit that causal connection [between the physical harm and defendant's failure to exercise reasonable care] to be proved by evidence that defendant's failure increased the risk of such harm as was suffered by plaintiff *or* by evidence that the harm was suffered because of reliance on the defendant's undertaking." 307 A.2d at 61 (emphasis added).

Rather than speculate as to how the Pennsylvania courts actually construe this provision, we simply note that even if the disjunctive approach adopted by this Court is not the accepted one, our instruction to the jury eased plaintiffs' burden of proof on the causation issue and thus was not prejudicial.

in the margin.[4] While Dr. Richter had not seen the history in the Jefferson Hospital records, it was clearly his position that it must have been at least partially based on the Lankenau Hospital history for which he was responsible.

During defense counsel's closing argument to the jury, the following colloquy took place:

MR. POST [Defense Counsel]: * * I just ask you to use as Mr. Litvin [Plaintiffs' Counsel] said your own common sense. He goes to another hospital. Does that hospital pick up the history from the previous hospital? Maybe they do. Look at that history in Jefferson Hospital. See if it is a word for word history from Lankenau.

MR. LITVIN: Your Honor, I must object. Neither Mr. Post nor I have put those Jefferson Hospital records into evidence to my knowledge.

*    *    *    *    *    *

THE COURT: There was testimony about what they said and the jury will have to recall the testimony about that. I show the Lankenau Hospital record, not the Jefferson.

MR. LITVIN: Your Honor, there was testimony by Dr. Richter, I believe, as to how those things are put together, but there was no testimony as to what was or was not in the various Jefferson records.

THE COURT: I think he did speak to the history being somewhat similar and his giving a guess maybe it was carried over. The jury will recall that testimony. [N.T. 7–121 to 7–122.]

Plaintiffs' position is that defense counsel's reference to the Jefferson Hospital records was improper and prejudicial and that the Court's comments were not adequate to cure the error. We do not agree. Dr. Richter's testimony set forth in footnote 4 is circumstantial evidence that the history contained in the Jefferson Hospital records was consistent with the Lankenau history. To the extent that defense counsel's remark to the jury merely suggested that the Jefferson history, as well as the Lankenau history, differed from Mr. Ayoub's trial testimony, we believe that it was sufficiently supported by evidence in the record. However, the further implication in defense counsel's remark that the Jefferson history was based on a second, independent statement by Mr. Ayoub which contradicted his trial testimony was improper and not justified by the record. The Court's comments on the objection raised by plaintiffs' counsel made clear that the Jefferson Hospital records had not been placed in evidence. Additionally, these comments undercut the unsupported implication of defense counsel's remark by suggesting that the testimony had been that the Jefferson history was based upon the Lankenau record, although leaving it to the jury to recall on its own precisely what that testimony had been. The Court believes that it adequately dispelled any prejudicial effect resulting from defense counsel's remark. However, even if we now believed our comments to have been insufficient, we would not grant a new trial on this ground. The Court does not believe that this brief comment by counsel could have had any lingering prejudicial effect on the jury such as to make the refusal of a new trial "inconsistent with substantial justice." Fed.R.Civ.P. 61;

4. "Q  Are you able to tell us from your knowledge not only in this case but of how hospitals work generally and specifically Jefferson Hospital, are you able to tell us if they do have a history similar to what you have been asked about, how that came about?
"A  Well, when a patient is referred from Lankenau to the Jefferson rehab hospital, one of the social workers makes a Xerox copy of the entire chart and sends it down to Jefferson with the patient so *they would clearly have my handwritten history* as it was plus all the rest of the records. This is so the continuity care is not lost and it is a useful thing, but *I am certain part of the history would have been gotten from me and some of it gotten directly from Mr. Ayoub. I don't know.*" [N.T. 3–114.] (Emphasis added.)

see *Kremser v. Keithan*, 56 F.R.D. 88 (M.D.Pa. 1972).

Plaintiffs' fifth contention is that the Court's instruction to the jury concerning the issue of proper diagnostic testing was erroneous. The pertinent part of the charge stated:

I instruct you that *if you conclude that the testimony supports the notion that there are a variety of ways of performing these tests* that Dr. Spencer is not obliged to perform all of the tests or only half of the tests. *It would be up to you to determine* if what he did, even though he may not have done all that some other doctor said he should do, whether or not nevertheless what he did under all the circumstances was in keeping with the standard that he should have honored as an orthopedic specialist at that time. . . . [N.T. 8–17 to 8–18.] (Emphasis added.)

Plaintiffs contend that the Court's charge instructed the jury that defendant was not obligated to perform various tests which several of defendant's own expert witnesses testified on cross-examination should have been performed. While it is true that a party is bound by the testimony of his own witnesses, this rule applies only where that testimony is not contradicted or impeached by other evidence. *Slater v. Erie Lackawanna Ry.*, 300 F.Supp. 1, 3 (W.D.Pa. 1968), *aff'd per curiam*, 411 F.2d 1015 (3d Cir. 1969). Expert opinion may be modified with the qualifications placed thereon by another expert. *Slater v. Erie Lackawanna Ry., supra*, 300 F.Supp. at 3. There was a wide range of contradictory opinions expressed by the expert witnesses in this case on the issue of what, if any, diagnostic tests should have been performed by defendant. We find recognition of this fact in plaintiffs' statement that "*almost* all of the experts called on behalf of Dr. Spencer agreed that neurological testing was called for considering the symptoms being evidenced by Mr. Ayoub."[5] The Court's instruction was intended to and, we believe, did make clear to the jury that, if it found the expert testimony on diagnostic testing to be contradictory, it was not bound to hold Dr. Spencer to a standard of conduct based on any particular witness' testimony. Rather, it was left to the jury to decide whether defendant's conduct conformed to that standard which the jury found, based on all the evidence, was the proper one for an orthopedic specialist in defendant's position. We find no prejudicial error in this instruction.

The Court has considered all of the grounds alleged by plaintiffs and has determined that there is no basis for awarding a new trial.

An appropriate Order will be entered.

---

5. Brief in Support of Motion for New Trial, at 12 (emphasis added).